IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 1, 2020

# IN RE K.L.E. ET AL.[1]

**Appeal from the Chancery Court for Washington County**
No. 18AD0727      John C. Rambo, Chancellor

_____

## No. E2019-02207-COA-R3-PT

_____

A mother and her husband petitioned to terminate the parental rights of the father of two of the mother's children. The mother and father of the children were married when the children were born. The father was arrested and sentenced to life imprisonment when the children were six months and two years old. The mother subsequently divorced the father and married another man who now is interested in adopting the two children. The trial court terminated the father's rights, and the father appealed. We affirm the trial court's judgment terminating the father's rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and CARMA DENNIS MCGEE, J., joined.

Joshua P. Sutherland, III, Abingdon, Virginia, for the appellant, D.L.E.

Carl Allen Roberts, Jr., Elizabethton, Tennessee, for the appellees, C.D.G. and K.M.G.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

C.D.G. ("Mother") and D.L.E. ("Father") are the parents of K.L.E. and S.E. (together, "Children"), who were born in 2005 and 2007, respectively. When K.L.E. was about two years old and S.E. was six months old, Father was arrested and jailed for marijuana possession. Father was later arrested and charged with conspiracy to sell narcotics and was sentenced to life imprisonment. At some point, Father's sentence was reduced to twenty-five years, and as of the time of trial in 2019, Father still had ten years

_____

[1]To protect the identity of the children, the parties' names have been initialized.

left to serve. Mother and Father were married when Father was arrested, but Mother obtained a divorce from Father in 2012. Mother married K.M.G. ("Stepfather") in January 2018, and Stepfather now wants to adopt Children.

Mother and Stepfather filed a petition to terminate Father's parental rights to K.L.E. and S.E. on November 26, 2018. The petitioners initially cited three grounds for terminating Father's rights: abandonment by failure to visit (Tenn. Code Ann. § 36-1-113(g)(1) and § 36-1-102(1)(A)(i)), abandonment by failure to provide support (Tenn. Code Ann. § 36-1-113(g)(1) and § 36-1-102(1)(A)(i)), and incarceration resulting from a criminal act when Children were less than eight years old at the time of sentencing and a sentence of ten years or more was imposed (Tenn. Code Ann. § 36-1-113(g)(6)). Mother and Stepfather later dismissed the first two grounds and pursued the termination of Father's rights based solely on the third ground involving Father's incarceration.

A trial was held on October 21, 2019, and Father testified by telephone from California, where he was in federal prison. Father acknowledged that he was serving a sentence of ten years or more as a result of being convicted for conspiracy to sell narcotics and that Children were less than eight years old when the sentence was imposed. A judgment from the United States District Court for the Western District of Virginia was admitted into evidence, and this document showed that Father was (1) adjudicated guilty of conspiracy to distribute 50 grams or more of cocaine base and 500 grams or more of cocaine and (2) sentenced to life imprisonment. Father testified that his sentence was later reduced from life to 300 months, which is twenty-five years. By the time of trial, Father had served fifteen years and still had ten years left to serve on his reduced sentence. Father testified that he was hoping to be released early, but he presented no evidence that he would, in fact, be released before the end of his twenty-five-year term.

Father testified that he loved Children and wanted to be a part of their lives. He enjoyed visiting with Children when Mother brought them to see Father in prison when Children were very young, but Father acknowledged that he had not seen them for many years. Father had used a computer in prison to text with K.L.E. for a period of time, but prison officials terminated this mode of communicating with K.L.E. once they realized that Father was sending her text messages. Father testified that it had been eighteen months to two years since he last heard from K.L.E.. Father testified that he sent gifts and cards to both K.L.E. and S.E. but that S.E. had not initiated any communication with Father while Father was in prison.

Mother testified that Father had told her he was going to get out of prison "any day now" for about ten years. She said that Father was a good provider and parent to Children before he was incarcerated. Mother testified that, over the years since he had been in prison, Father sent Children "occasional birthday cards" and that each child had a ceramic cup that Father made and sent to them. She said she brought K.L.E. and S.E. to visit Father in prison two or three times. Mother recalled that S.E. screamed and cried when Father

wanted to hold him because S.E. did not know who Father was; S.E. was only six months old when Father was first incarcerated.

Mother also testified about Father's communications with K.L.E. She explained that Father was sending K.L.E. texts on a WiFi phone Mother had given her. When the texts from him began upsetting K.L.E., Mother terminated Father's communication with K.L.E.:

> So I've always monitored communication between them just to make sure that was appropriate conversation, and it has been appropriate conversation. And he told her in this message that "your mom messed up because now you guys are back in Johnson City, and I know how to get a-hold of you." And my daughter was crying. She was very upset, and a second message had come through like in a day or two because I told her to . . . not respond anymore, you know. And a second message came through and said he was going to have her picked up at school; that he knew where she was, and that he could have her picked up at school. And so my daughter was really upset because she thought that someone was going to kidnap her. And that's when I stopped communication, and that has been about a year and half or two years ago, more like two years ago.

Mother denied that she interfered with Father's communication with K.L.E. other than as she described above. She added that Father's interest in Children seemed to be based on whether or not Mother was communicating with Father: "if I'm not entertaining conversation with [Father], if I don't show interest in [Father], there's no interest shown in my children."

Mother testified that Father did not have a meaningful relationship with K.L.E. or S.E. and that Children would be negatively affected emotionally if they were forced to visit with Father if he were released from prison and wanted to become involved in their lives again. K.L.E. was thirteen years old at the time of the hearing and S.E. was twelve. The court asked Mother why she wanted Father's parental rights terminated, and Mother responded:

> Because I want K.L.E. and S.E. to have like a sense of normalcy. They've not had a dad for all these years, and [Stepfather] has provided that for them. He -- I mean he goes above and beyond to do everything that a father should do. I mean like my daughter, if she gets upset, she'll go to him first a lot of times before she'll even come to me.

The trial court issued an order terminating Father's parental rights on November 26, 2019. It found the following facts were established by clear and convincing evidence:

4. Father was incarcerated in the Federal Bureau of Prisons facility in Butner, North Carolina, and he was subsequently transferred to the Victorville Federal Correction Complex in Adelanto, California.

5. Father was confined to the Federal penal system under a lifetime sentence that was imposed by the United States District Court for the Western District of Virginia on August 14, 2009. His sentence was subsequently reduced to 300 months.

6. Prior to his incarceration, Father had a close and loving relationship with K.L.E. He actively participated in activities and child-rearing responsibilities with and for her. [S.E.] was an infant, and Father did not have as close a relationship with his youngest child.

7. Father's conviction that led to a lifetime sentence was for Conspiracy to Distribute 50 grams or more of Cocaine Base and 500 Grams or more of Cocaine. When the sentence was imposed, K.L.E. was three years old and [S.E.] was two years old. When Father was initially arrested, [S.E.] was six months old, and K.L.E. was two years old.

8. Father has not paid any child support to Mother.

Based on these facts, the trial court found that Mother and Stepfather:

proved by clear and convincing evidence the statutory grounds [for] termination of parental rights against Father for incarceration of parent for ten or more years when the children were less than eight years old pursuant to Tennessee Code Annotated section 36-1-113(g)(6).

The court then conducted a best interest analysis, which we will address more fully below. As a result of this analysis, the trial court stated, "Evaluating the evidence and the totality of the best interest factors from the Children's point of view, terminating Father's parental rights is clearly and convincingly in the Children's best interest."

Father appeals the trial court's decision to terminate his parental rights to K.L.E. and S.E.

II. ANALYSIS

A. Standard of Review

The Tennessee Supreme Court has described the appellate review of parental termination cases as follows:

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (citations omitted); *see also In re Gabriella D.*, 531 S.W.3d 662, 680 (Tenn. 2017).

The termination of a parent's rights is one of the most serious decisions courts make. As the United States Supreme Court has said, "[f]ew consequences of judicial action are so grave as the severance of natural family ties." *Santosky v. Kramer*, 455 U.S. 745, 787 (1982). "Terminating parental rights has the legal effect of reducing the parent to the role of a complete stranger," *In re W.B., IV*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at \*6 (Tenn. Ct. App. Apr. 29, 2005), and of "severing forever all legal rights and obligations of the parent or guardian," Tenn. Code Ann. § 36-1-113(l)(1).

A parent has a fundamental right, based in both the federal and state constitutions, to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995) (citing *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993)). This right "is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re Carrington H.*, 483 S.W.3d at 521 (citing U.S. CONST. amend. XIV, § 1; TENN. CONST. art. 1, § 8). While this right is fundamental, it is not absolute. *Id.* at 522. The State may interfere with parental rights in certain circumstances. *Id.* at 522-23; *In re Angela E.*, 303 S.W.3d at 250-51. Our legislature has listed the grounds upon which termination proceedings may be brought. *See* Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, and a parent's rights may be terminated only where a statutory basis exists. *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must find by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "'Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings.'" *In re Carrington H.*, 483 S.W.3d at 522 (quoting *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted)). "Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005). As a reviewing court, we "must 'distinguish between the specific facts found by the trial court and the combined weight of those facts.'" *In re Keri C.*, 384 S.W.3d 731, 744 (Tenn. Ct. App. 2010) (quoting *In re Tiffany B.*, 228 S.W.3d 148, 156 (Tenn. Ct. App. 2007)). Then, we must determine "whether the combined weight of the facts . . . clearly and convincingly establishes all of the elements required to terminate" a parent's rights. *Id.* "When it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are 'uniquely positioned to observe the demeanor and conduct of witnesses.'" *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)).

If a ground for termination is established by clear and convincing evidence, the trial court or the reviewing court conducts a best interests analysis. *In re Angela E.*, 303 S.W.3d at 251. "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination," *id.* at 254, and the existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child," *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App. June 26, 2006).

B.  Termination of Father's Rights Pursuant to Tenn. Code Ann. § 36-1-113(g)(6)

1.  Ground for Termination

The sole ground for terminating Father's parental rights that Mother and Stepfather pursued at trial was Tenn. Code Ann. § 36-1-113(g)(6), which provides:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

Father does not challenge this ground as the basis for the trial court's termination of his parental rights, but we must still determine whether Mother and Stepfather proved this ground by clear and convincing evidence. *See In re Carrington H.*, 483 S.W.3d at 525-26.

We have held that when a petition to parental termination is based on the ground set forth at Tenn. Code Ann. § 36-1-113(g)(6), the trial court "need not look beyond the judgment of conviction and the sentence imposed by the criminal court in order to determine whether this ground for termination applies." *In re Audrey S.*, 182 S.W.3d 838, 876 (Tenn. Ct. App. 2005). The criminal judgment adjudicating Father's guilt for conspiring to sell cocaine and cocaine base and sentencing him to life imprisonment was introduced into evidence. Father concedes that Children were both under the age of eight when the sentence was imposed. We agree with the trial court that this ground for terminating Father's parental rights was established by clear and convincing evidence.

2. Best Interests Analysis

Having found that clear and convincing evidence was introduced to support a ground for terminating Father's parental rights, we next consider whether the trial court properly determined that termination of Father's rights was in Children's best interest. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d at 860. When considering the statutory factors, "courts must remember that '[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective.'" *In re Gabriella D.*, 531 S.W.3d at 681 (quoting *In re Audrey S.*, 182 S.W.3d at 878); *see also White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004) (stating parent's and child's interests diverge once ground for termination has been proven by clear and convincing evidence). "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child . . . ." Tenn. Code Ann. § 36-1-101(d); *see also In re Gabriella D.*, 531 S.W.3d at 681-82.

"Facts relevant to a child's best interests need only be established by a preponderance of the evidence, although [Petitioners] must establish that the combined weight of the proven facts amounts to clear and convincing evidence that termination is in the child's best interests." *In re Carrington H.*, 483 S.W.3d at 535 (citing *In re Kaliyah S.*, 455 S.W.3d at 555); *see also In re Gabriella D.*, 531 S.W.3d at 681. The factors a trial court is to consider when conducting a best interest analysis are set forth in Tenn. Code Ann. § 36-1-113(i). The trial court reviewed each of the factors set forth in the statute and applied them to the facts of this case. The court wrote:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

Father's incarceration precludes his ability to properly care and provide for the children. He has no home. This factor favors the termination of the child-father relationship for both Children.

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

This factor is not applicable.

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

Father is confined to a federal penitentiary because of his conduct. His freedom of movement and association was necessarily removed. As a result, he is unable to regularly visit or contact the children. Mother initially would take the Children to visit him, but she stopped taking the Children after the visits would upset [S.E.] This factor does not favor the Children continuing to have a parent-child relationship with Respondent.

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

The Children were small when Father entered the Federal prison system. Father never had a close relationship with his youngest child, but he did have a close relationship with the oldest. Although Father and K.L.E. would regularly text, he is unable to text her now that he is confined at the prison in California. . . . Mother was compelled to end the texting between K.L.E. and Father when he sent her threatening texts about Mother, which caused K.L.E. to think she would be kidnapped. Father's close relationship with K.L.E. has faded with time. He last communicated with her 18 months prior to trial, and there is no longer any close parent-child bond or relationship between Father and either child. This factor does not favor the Children continuing to have a parent-child relationship with Father.

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

Allowing the Children to be adopted by their stepfather provides the Children with the best chance of stability in a father-child relationship. Respondent is unable to care for the Children and the Children have a father-child relationship with their Stepfather, but they are aware that Respondent is their

biological father. Depriving the Children of the opportunity to have a father while they are children will have a negative effect on the Children's emotional and psychological wellbeing.

> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

Father never exhibited these adverse behaviors prior to his incarceration. This factor does not favor the termination of the parent-child relationship between Children and Respondent.

> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, and whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

Father is an inmate in a facility run by the Federal Bureau of Prisons. His home is not safe for children, and he is separated [from] them due to his confinement. This factor favors the termination of the parent-child relationship between the Children and Respondent.

> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

No persuasive evidence suggested that Father's mental or emotional status would be detrimental [to] the children. This factor does not favor the termination of Father's parental rights.

> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Father has not paid child support, which is a result of his actions that caused his incarceration. Thus, his inability to work and support is his responsibility. This factor does not favor the Children continuing to have a parent-child relationship with Respondent.

After reviewing each of the statutory best interest factors, the trial court explained why it believed terminating Father's rights was in Children's best interest:

> The most relevant factors are those factors which suggest it is in the Children's best interests for the parent-child relationship to end with Respondent. Father and Children have not had a close relationship since Father's incarceration, and there is no longer a strong parent-child relationship between Father and K.L.E.. There has never been a close parent-child relationship between Father and [S.E.] Father is not financially supporting the Children, and he has no immediate plans to assume partial responsibility for the care and costs associated with the Children because the Children will, most likely, be adults when Father is released from prison custody.

> The redeeming factors for Father are not nearly as important as the factors dictating termination of parental rights. Evaluating the evidence and the totality of the best interest factors from the Children's point of view, terminating Father's parental rights is clearly and convincingly in the Children's best interest.

Father contends that factors three and four do not favor termination of his rights to K.L.E. and S.E. He argues that the trial court erred by finding that he did not maintain regular contact with Children and that he did not have a meaningful relationship with Children. Father points to his close relationship with K.L.E. prior to his incarceration and his attempts to maintain that relationship over the years and to develop a relationship with S.E. "[A] trial court does not have to find the existence of each enumerated factor before it may conclude that termination is in the child's best interest." *In re Addalyne S.*, 556 S.W.3d 774, 793 (Tenn. Ct. App. 2018) (citing *In re Navada N.,* 498 S.W.3d 579, 607 (Tenn. Ct. App. 2016)). The trial court recognized Father's relationship with K.L.E. prior to his incarceration but found, consistent with the evidence, that the relationship had faded with time and that there had been no communication between Father and K.L.E. for eighteen months. Other than gifts and cards that Father sent to S.E., no evidence was introduced that that there was any meaningful relationship between Father and S.E. "'Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis.'" *Id.* (quoting *In re Navada N.*, 498 S.W.3d at 607)).

No evidence was introduced that Father will be released from prison before Children reach adulthood. Father failed to show that the trial court erred in finding that Children will be negatively affected emotionally and psychologically by being deprived of the opportunity to have a father while they are children. Stepfather wants to adopt Children

and is available to be the father figure Father is unable to be due to circumstances that Father created for himself.[2]

We find that the evidence introduced at trial clearly and convincingly establishes that it is in Children's best interest for Father's parental rights be terminated. We affirm the trial court's judgment terminating Father's parental rights to K.L.E. and S.E.

### III. CONCLUSION

The trial court's judgment is affirmed. Costs of this appeal shall be taxed to the appellant, D.L.E.

_____
ANDY D. BENNETT, JUDGE

---

[2]Terminating Father's parental rights does not prevent Father from attempting to develop a relationship with Children once he is out of prison. If Children are adults at that time, it will be up to Children to decide whether they want a relationship with Father.